UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

---------------------------------------------------------

J.H., through his next of friend ROSIE PHILLIPS, | CASE NO. 18-cv-00994

    Plaintiff,

  v. | **JUDGE S MAURICE HICKS, JR**

SHERIFF STEPHEN W. PRATOR, as the public entity responsible for the Caddo Parish Sheriff's Office, | **MAGISTRATE JUDGE KAREN L HAYES**

    Defendant.

---------------------------------------------------------

# MEMODANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

**BIZER & DEREUS**
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Emily A. Westermeier (LA# 36294)
ewest@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................................ii

TABLE OF AUTHORITIES……………………………………………………………….……iii

I.      INTRODUCTION…………………………………………………………………...1

II.     BACKGROUND..……………………………………………………………………...1

III.    PROCEDURAL BACKGROUND……………………………………………………3

IV.    LAW & ANALYSIS…………………………………………………………………...3

        A.     The ADA/Rehabilitation Act Standard, Generally ......………...........…………..3

        B.     A Claim for Damages Requires a Showing of "Intentional Discrimination"..……4

        C.     In a Case of Dubious Reliability, the Fifth Circuit Crafted a Narrow Exception to the ADA that is Applicable Where a Police Officer Responds to an "On-the-Street" Disturbance and is Presented with Exigent Circumstances Where There is a Threat to Human Life......................................................................................5

        D.     This Case Involves a Minor Student Who was Approached by an Officer in a Predictable, School Environment. The "On-the-Street" Exception to the ADA/RA Created by the Fifth Circuit in Hainze is Simply Not Applicable…......8

        E.     The Hainze Exception Is Not Applicable Because There was Never a "Threat to Human Life"......................................................................................................9

        F.     In the Alternative, Even if There Were Temporary "Exigent Circumstances," Any "Exigent Circumstances" Had Abated and Officer Nunnery Had Sufficient Opportunity to Provide J.H. with a Reasonable Accommodation........10

        G.     The Actions of Officer Nunnery Constitute "Intentional Discrimination" Because He Knew That Minor J.H. Was Disabled and He Chose Not to Accommodate His Disability..............................................................................13

        H.     Plaintiff Urges this Court to Hold that Hainze is No Longer Good Law..............14

III.    CONCLUSION…………………………………………………………………..16

# **TABLE OF AUTHORITIES**

**CASES**

*Agostini v. Felton*, 521 U.S. 203 (1997)......................................................................................15

*Bircoll v. Miami–Dade County*, 480 F.3d 1072 (11th Cir.2007).....................................................7

*City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1772, 191 L. Ed. 2d 856 (2015)..........................................................................................................................................6, 7

*Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567 (5th Cir. 2002).....................................1, 4, 5, 13

*Does 1–7 v. Round Rock Indep. Sch. Dist.*, 540 F. Supp. 2d 735, 749 (W.D. Tex. 2007).............15

*EEOC v. Sidley Austin Brown & Wood*, 406 F. Supp. 2d 991, 996 (N.D. Ill. 2005).....................15

En*riquez v. Union Pac. R.R.*, No. 5:03–CV–174, 2004 U.S. Dist. LEXIS 28989, 35–36 (E.D. Tex. Jan. 30, 2004)........................................................................................................................15

*Esparza v. Univ. Med. Ctr. Mgmt. Corp.*, No. CV 17-4803, 2017 WL 4791185, at *17 (E.D. La. Oct. 24, 2017)..................................................................................................................13

*Frame v. City of Arlington*, 657 F.3d 215 (5th Cir. 2011)............................................................. 4

*Gohier v. Enright*, 186 F.3d 1216 (10th Cir.1999).........................................................................7

*Hainze v. Richards*, 207 F.3d 795 (5th Cir. 2000)..................................................................passim

*Hale v. King*, 642 F.3d 492, 499 (5th Cir.2011).............................................................................4

*Kemp v. Holder*, 610 F.3d 231 (5th Cir. 2010) ............................................................................. 3

*Miraglia v. Bd. of Supervisors of Louisiana State Museum*, 901 F.3d 565 (5th Cir. 2018).................................................................................................................1, 4, 5, 13

*Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 185–86 (5th Cir. 2015)........4, 13

*Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016)............................................................................8, 15

*Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).......................................9

*Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014)...........................6

*Tucker v. Tennessee*, 539 F.3d 526, 534 (6th Cir.2008)................................................................7

*United States v. Chambers*, 395 F.3d 563, 566 (C.A.6 2005)......................................................12

*United States v. Gould*, 364 F.3d 578, 590 (C.A.5 2004)............................................................12

*United States v. Richard*, 994 F.2d 244, 247 (5th Cir.1993).......................................................10

*United States v. Rico*, 51 F.3d 495, 501 (5th Cir. 1995) .........................................................10, 12

*United States v. Short*, 181 F.3d 620, 624 (5th Cir. 1999)..........................................................15

*Waller ex rel. Estate of Hunt v. City of Danville*, 556 F.3d 171, 175 (4th Cir.2009).....................7

*Windham v. Harris Cty., Texas*, 875 F.3d 229, 237 (5th Cir. 2017)...............................................5

**STATUTES**

Americans With Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 328 (1990) .............. passim

Section 504 of the Rehabilitation Act of 1973, Pub. L. No. 93-112, 87 Stat. 394
(Sept. 26, 1973), codified at 29 U.S.C. § 701 et seq. ................................................................. passim

## INTRODUCTION

Plaintiff J.H., through his next fried Rosie Phillips, and undersigned counsel, submits this memorandum in opposition to Defendant's motion for judgment on the pleadings. On August 31, 2017, J.H., a nonverbal minor who has severe autism, was manifesting symptoms of his disability in the hallway adjacent to a special education classroom in a public school. Instead of providing J.H. with a reasonable accommodation, Defendant's deputy enlisted school staffers to ensnare J.H. an intimidating semi-circle, did nothing to accommodate his limitations for a period of approximately six minutes, and then used violent force against J.H. J.H. brings suit under the Americans with Disabilities Act and the Rehabilitation Act. Now, in an effort to obtain early dismissal, Defendant attempts to shoehorn Plaintiff's claims into a judicially-created exception to the ADA that only applies when an officer is responding to exigent circumstances "on the street." Here, Defendant's employee was not "on the street", he was not responding to "exigent circumstances", and certainly there was no "threat to human life." Additionally, even if exigent circumstances initially existed, those "exigent circumstances" had dissipated and Defendant's deputy had an opportunity provide J.H. with an accommodation.

Defendant's deputy had knowledge of Plaintiff's disability and attendant limitations and he knew or should have known of reasonable accommodation that should have been provided. Under the binding Fifth Circuit cases of *Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567 (5th Cir. 2002) and *Miraglia v. Bd. of Supervisors of Louisiana State Museum*, 901 F.3d 565 (5th Cir. 2018), these facts constitute intentional discrimination. Defendant's motion for judgment on the pleadings is based on an incomplete statement of the facts and the law and should be denied.

## BACKGROUND

J.H. is an autistic, non-verbal individual, and was a minor during the events underlying

his claims in this action. Compl. ¶ 1. During the 2017-18 school year at Northwood High School ("NHS"), J.H. was enrolled in tenth grade in NHS's program for children with severe and profound autism. *Id.* NHS is under the purview of the Caddo Parish School Board, who contracted with Stephen W. Prator, the public entity responsible for the Caddo Parish Sheriff's Office ("Caddo Parish Sheriff's Office"), to provide armed Sheriff's deputies at six schools during the 2017-18 school year, including NHS. *Id.* at ¶ 2.

On August 31, 2017, J.H. was in class and began to manifest symptoms of his disability, which caused him to leave the classroom and run into the hallway. *Id.* at ¶ 4. Deputy Nunnery, the Caddo Parish Sheriff's deputy assigned as the school resource officer ("SRO") at NHS, was summoned to the hallway outside J.H.'s classroom. *Id.* Rather than attempt to de-escalate the situation, Deputy Nunnery enlisted the school staff to form a semi-circle around J.H. *Id.* As a result, J.H. became confused and attempted to break free from the semi-circle and began moving down the hallway. *Id.* At this point, Deputy Nunnery fired his taser, striking J.H. several times, which caused J.H. to fall on the floor, immobilized and in shock, urinating on himself. *Id.* J.H. remained on the floor and no efforts were made to check on J.H.'s condition until his mother arrived fourteen (14) minutes later. *Id.*

After J.H. was tased by Deputy Nunnery, J.H.'s social skills have seriously regressed. *Id.* at ¶ 6. J.H. began exhibiting common manifestations of autistic behavior like stimming and repetitive touching—behaviors he has not exhibited for several years. *Id.* J.H. does not want to leave the house or be in a room alone, and favors close contact with people where before he avoided close physical proximity and contact. *Id.* As a result of this incident, J.H. has suffered serious emotional distress, trauma, anxiety, fear, depression, and invasion of his civil rights. *Id.* While J.H. was unable to return to school for several months due to the escalated manifestations

2

of autistic behavior, he is currently enrolled as a student at a Caddo Parish District school.

J.H. alleges that Caddo Parish Sheriff's Office violated his civil rights and discriminated against him because he is autistic. Compl. ¶¶ 73-74 . Prior to the incident where J.H. was tased, Caddo Parish Sheriff's Office did not provide training related to interactions with individuals with autism to those Sheriff's deputies who were assigned as SROs. *Id.* at ¶ 38. J.H. alleges that this failure to train SROs assigned to schools where they regularly interact with students with autism resulted in discrimination under Title II of the ADA and Section 504 of the Rehabilitation Act because the SRO failed to reasonably accommodate J.H.'s disability. *Id.* at ¶ 87, 96.

## PROCEDURAL BACKGROUND

J.H., through his next friend, Rosie Phillips, filed this action on August 1, 2018 against the Caddo Parish Sheriff's Office. R. Doc. 1. Defendant filed its Answer to the complaint on October 18, 2018. R. Doc. 7. On April 8, 2019, Defendant filed a motion for judgment on the pleadings. R. Doc. 18. In its supporting memorandum, Defendant argues that Plaintiff's claims fall within a narrow exception to the ADA for instances where an officer is faced an "on-the-street response" to a reported disturbance that presents "exigent circumstances" where there exists a "threat to human life." Alternatively, Defendant argues that Plaintiff fails to state a claim for "intentional discrimination." Finally, Defendant argues that Plaintiff's declaratory judgment claim fails for lack of Article II standing. As is set forth below, all three of Defendant's arguments fail as a matter of law.

## LAW & ANALYSIS

### A.   The ADA/Rehabilitation Act Standard, Generally.

The ADA/§504 "are judged under the same legal standards, and the same remedies are available under both Acts." *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (per curiam). "To show a violation of either statute, a plaintiff must prove '(1) that he has a qualifying

3

disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability.' *Miraglia*, 901 F.3d at 574 (*quoting Hale v. King*, 642 F.3d 492, 499 (5th Cir.2011) (per curiam)). Thus, "[a]lthough[, for the purposes of this motion, Plaintiffs] focus primarily on Title II, [the] analysis is informed by the Rehabilitation Act, and [. . .] applies to both statutes." *Frame v. City of Arlington*, 657 F.3d 215, 224 (5th Cir. 2011) (en banc).

   **B.**  **A Claim for Damages Requires a Showing of "Intentional Discrimination."**

To recover compensatory damages in a case regarding the failure to provide a necessary accommodation a plaintiff must also make a showing of intentional discrimination. In *Delano-Pyle* the Fifth Circuit was confronted with an individual who required an accommodation during a rapidly-occurring situation: an arrestee who alleged that a sheriff's officer failed to adequately accommodate his hearing impairment during a DUI stop and subsequent booking. 302 F.3d at 570. No matter how many times the officer repeated himself and no matter how loudly he spoke, the hearing-impaired individual could not understand most of what the officer was saying. *See id*. at 575. The officer also attempted to accommodate the plaintiff by writing his Miranda warnings on a blackboard. *See id*. at 571. The Jury found that the defendant committed intentional discrimination and the Fifth Circuit sustained that finding. *See id*. at 571, 576.

Subsequently, in *Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 185–86 (5th Cir. 2015) the Fifth Circuit noted that:

> "In *Delano–Pyle*, the plaintiff did not show he ever requested an interpreter or auxiliary aid, yet we concluded that the failure to provide an effective form of communication was evidence of intentional discrimination. Here, some evidence indicates that the plaintiffs made repeated requests for auxiliary aids, yet DHR failed on several occasions to provide effective aids and in some instances refused to provide an interpreter after one had been requested. We conclude that, even without applying a deliberate indifference standard, there is a genuine dispute of material fact as to whether DHR intentionally discriminated

4

against the plaintiffs."

*Id*. at 185-86 (emphasis added).

A public entity is put on notice of a disabled individual's need for accommodation either through a request for accommodation, or when "the disability, resulting limitation, and necessary reasonable accommodation" [are] open, obvious, and apparent to the entity's relevant agents." *Windham v. Harris Cty., Texas*, 875 F.3d 229, 237 (5th Cir. 2017) (internal citations, quotations, and alterations omitted). The Fifth Circuit has explained that a disability can be "obvious" where the relevant agent either "knew or should have known" what sort of accommodation was needed. *Id*. at 237-38. Where the public entity has an opportunity to accommodate the known needs of a person with a disability and yet fails to accommodate, the public entity may be held liable for intentional discrimination. *See Miraglia*, 901 F. 3d at 575.[1]

In sum, *Delano-Pyle, Windham*, and *Miraglia* all stand for the proposition that intentional discrimination exists where a defendant has knowledge of the plaintiff's disability and nonetheless choses to not provide an adequate accommodate.

> **C. In a Case of Dubious Reliability, the Fifth Circuit Crafted a Narrow Exception to the ADA that is Applicable Where a Police Officer Responds to an "On-the-Street" Disturbance and is Presented with Exigent Circumstances Where There is a Threat to Human Life.**

In *Hainze v. Richards*, the Fifth Circuit was tasked with being one of the first district courts to decide police officers' obligations under the ADA in the face of extreme danger. 207

---

[1] *See Miraglia*, 901 F. 3d at 575 ("But what is common between our courts and other courts is that a defendant must have notice of the violation before intent will be imputed. **See Delano-Pyle, 302 F.3d at 575–76 (affirming damages based on a defendant's knowledge of the plaintiff's disability and his decision not to accommodate him)**; *Perez*, 624 F. App'x at 185 (affirming damages when a defendant "ignored clear indications" of the plaintiff's impairment and "failed to provide an effective form of communication"); *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir.2012) (adopting "the twin requirements that the defendant-entity had actual notice that it was in violation of [the law] and had an opportunity to rectify the violation" for purposes of the RA).") (emphasis added).

F.3d 795 (5th Cir. 2000). The officers in *Hainze* reached a convenience store parking lot and encountered an individual wielding a knife and standing next to a pickup truck occupied by two persons. *Id*. at 801. After being ordered to get away from the truck, the knife-wielding individual immediately began walking towards the officer brandishing the knife and ignoring the officer's repeated orders to stop. *Id*. When the knife-wielding assailant was within "a few feet," the officer made a quick decision out of self-defense to fire his weapon. *Id*. A mere twenty seconds elapsed between the time the officers arrived on the scene and the time they were forced to make a "split-second" decision to fire his weapon. *Id*. at 802.

Under this very-specific set of facts, the Fifth Circuit held that "Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and <u>ensuring that there is no threat to human life</u>." *Id*. at 801 (emphasis added). The Court went on to explain that "[t]o require the officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and any nearby civilians, would pose an unnecessary risk to innocents." *Id*. The Fifth Circuit has not yet issued any subsequent opinions delineating the scope of this holding.

In *Sheehan v. City & Cty. of San Francisco*, the Ninth Circuit held that because the ADA covers public "services, programs, or activities," § 12132, the ADA's accommodation requirement should be read to "to encompass 'anything a public entity does,' " 743 F.3d 1211, 1232 (9th Cir. 2014), rev'd in part, cert. dismissed in part sub nom. *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 191 L. Ed. 2d 856 (2015). The Ninth Circuit agreed "that exigent circumstances inform the reasonableness analysis under the ADA," *ibid*.,

6

but concluded that it was for a jury to decide whether San Francisco should have accommodated Sheehan by, for instance, "respect[ing] her comfort zone, engag[ing] in non-threatening communications and us[ing] the passage of time to defuse the situation rather than precipitating a deadly confrontation." *Id*., at 1233.

Other circuits have also declined to adopt the Fifth Circuit's approach. In *Bircoll v. Miami–Dade County*, 480 F.3d 1072 (11th Cir.2007), the Eleventh Circuit held that "the question is not so much one of the applicability of the ADA because Title II prohibits discrimination by a public entity by reason of [a person's] disability. The exigent circumstances presented by criminal activity and the already onerous tasks of police on the scene go more to the reasonableness of the requested ADA modification than whether the ADA applies in the first instance." *Id*. at 1085. Similarly, in *Gohier v. Enright*, 186 F.3d 1216 (10th Cir.1999), the Tenth Circuit held that "a broad rule categorically excluding arrests from the scope of Title II ... is not the law." *Id*. at 1221. In *Waller ex rel. Estate of Hunt v. City of Danville*, 556 F.3d 171, 175 (4th Cir.2009), the Fourth Circuit reserved judgment on the Fifth Circuit's approach and then went on to consider a reasonable accommodation claim involving an arrest. Like the Eleventh Circuit, *Waller* held that "exigency is one circumstance that bears materially on the inquiry into reasonableness under the ADA." *Id*. *See also Tucker v. Tennessee*, 539 F.3d 526, 534 (6th Cir.2008) (addressing a Title II reasonable accommodation claim in which the plaintiffs asserted that police officers "discriminated against them in violation of the ADA by failing to provide a qualified sign language interpreter or other such reasonable accommodation(s) during the domestic disturbance call that resulted in their arrest").

Indeed, the shaky grounds of the *Hainze* decision is evidenced from the Supreme Court's attempt to resolve whether the ADA requires an officer to accommodate an "armed and violent"

7

individual with a mental illness. In *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1772, 191 L. Ed. 2d 856 (2015), the Supreme Court granted certiorari to decide whether § 12132 of the ADA "requires law enforcement officers to provide accommodations to an armed, violent, and mentally ill suspect in the course of bringing the suspect into custody." *Id*. at 1768. However, the Court determined that in its briefing "San Francisco chose to rely on a different argument than what it pressed below." *Id*. at 1772-73. Given this procedural error and the lack of sufficient briefing, this question was dismissed as improvidently granted. *Id*. at 1778.

### D. This Case Involves a Minor Student Who was Approached by an Officer in a Predictable, School Environment. The "On-the-Street" Exception to the ADA/RA Created by the Fifth Circuit in *Hainze* is Simply Not Applicable.

The narrow exception created in *Hainze* for an "on-the-street" response to a disturbance that constitutes "a threat to human life" is not applicable to this case. At the time J.H. was approached by Deputy Nunnery, he was an unarmed minor that was running in and out of his special education classroom.

Here, Deputy Nunnery was not responding to a deranged man in a parking lot brandishing a knife. Instead, Deputy Nunnery was responding to a disturbance in a school hallway directly outside of a special education classroom. Deputy Nunnery was not responding to an "on-the-street" disturbance where there was a "threat to human life" and, thus, the *Hainze* exception is not applicable. It is predictable that children in a special education classroom will "act up" and have their disabilities manifest. This is why many children with disabilities are in a special education classroom to begin with. Expansion of the already-questionable *Hainze* exception from "on-the-street" with a "threat to human life" to the hallways of a school outside of a special education classroom would violate the Supreme Court's directive not to create or engraft unwritten "exceptions" onto otherwise clear textual requirements. *Ross v. Blake*, 136 S.

8

Ct. 1850, 1856 (2016) (stating that "Statutory interpretation, as we always say, begins with the text" and "Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement."). Plaintiff urges this Court reject Defendant's request to expand an already-questionable unwritten exception.

      E.      **The *Hainze* Exception Is Not Applicable Because There was Never a "Threat to Human Life."**

As a threshold matter, the *Hainze* exception is not applicable because J.H. was never a "threat to human life." As is set forth above, the language of *Hainze* states that the ADA is not applicable while an officer is securing a scene that presents "a threat to human life." J.H. was never a "threat to human life." J.H. was not brandishing a knife; he was not wielding a gun; he was not in possession of a physical instrument of any kind. Instead, J.H. was compulsively drinking water, plugging his ears, and entering and exiting a special education classroom. Compl. ¶¶ 45-46. Defendant cites no case law that suggests that an unarmed, minor student constitutes an "exigent" threat to human life.

To bolster its attempt to describe an unarmed minor as an "exigent threat," Defendant uses inflammatory language in its memorandum that is not contained in the Complaint. Defendant describes J.H. as attempting to "lunge and kick" at school administrators, as "charging" at administrators, and as having "physically resisted and struck the administrators multiple times." R. Doc. 18-1 at 6-7. Defendant's characterization of the events is inappropriate because the complaint must be construed in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Plaintiff's counsel anticipates that what Defendant labels as "lunging" or "charging" will be described as normal and involuntary movement for a person with autism who has lost control. Further, Defendant's use of the words "lunging" or "charging" suggests that J.H. was acting intentionally in an attempt to cause injury

9

to the administrators. As alleged in the Complaint, however, J.H. was exhibiting the "obvious manifestations" of his disability. Compl. ¶ 51. Plaintiff urges this Court to reject Defendant's inflammatory description of the video at the pleading stage.

### F. In the Alternative, Even if There Were Temporary "Exigent Circumstances," Any "Exigent Circumstances" Had Abated and Officer Nunnery Had Sufficient Opportunity to Provide J.H. with a Reasonable Accommodation.

Merriam-Webster's Dictionary defines "exigent" as "requiring immediate aid or action." In the context of warrantless entry, the Fifth Circuit has held that "Exigent circumstances 'include those in which officers reasonably fear for their safety, where firearms are present, or where there is a risk of a criminal suspect's escaping or fear of destruction of evidence.'" *United States v. Rico*, 51 F.3d 495, 501 (5th Cir. 1995) (citing *United States v. Richard*, 994 F.2d 244, 247 (5th Cir.1993)). As is discussed above, the "exigent circumstances" in *Hainze* occurred in the context of a knife wielding individual who appeared to be menacing individuals in a truck and, upon arrival of the police, immediately began walking towards the officers with the knife and ignored their repeated orders to stop.

Even if the Court decides to expand the "on-the-street" response exception to a school hallway and that an unarmed minor can somehow constitute a "threat to human life," any "exigent circumstances" had completely abated by the time Deputy Nunnery arrived at the scene at approximately 9:36:07. Compl. ¶ 49. Defendant's memorandum attempts to give Deputy Nunnery the benefit of "knowing" the events that occurred before 9:36:07, but there is no allegation in the Complaint that Deputy Nunnery had knowledge of the specific sequence of the events that occurred between 9:24:40 and 9:36:07. Without any knowledge, Deputy Nunnery approached the scene as a "blank slate."

When Deputy Nunnery approached the scene, he encountered J.H., a minor child with a

10

disability outside of a special education classroom who was exhibiting "predictable and obvious manifestation of autism." Compl. ¶ 51. Upon Deputy Nunnery's arrival, J.H. swatted at the administrators and fell to the floor. *Id.* at ¶ 49. For the next approximately five minutes and thirty seconds J.H. continued to exhibit predictable manifestations of autism and remained essentially motionless and planted in one location. *Id.* at ¶ 52. J.H. had his fingers in his ears, and was leaning against the hallway wall with his head down, in an apparent attempt to self-soothe. *Id.* at 51. To the extent there was ever "exigent circumstances," these circumstances abated upon Deputy Nunnery's arrival.

Instead, of working to accommodate J.H.'s disability, Deputy Nunnery escalated the situation by configuring himself and the three administers in a semi-circle around J.H. Compl. ¶ 55. Specifically, J.H. was flanked by four large men. *Id.* at ¶ 53. As the law enforcement officer, Deputy Nunnery could have ordered the administrators and/or teachers to leave the scene while he obtained control of the situation. *Id.* at ¶ 54. Deputy Nunnery gave no such instruction. Instead, all four large men stood in a semi-circle around J.H. *Id.* During the approximate five minutes and thirty seconds that J.H. was standing against the wall, Deputy Nunnery did not take any steps to deescalate the situation. *Id.* at ¶ 55. This five minute and thirty second period of calm gave Deputy Nunnery more than sufficient opportunity to use a calming tone, work to use de-escalation techniques, break up the menacing semi-circle, or radio to headquarters on how to deal with an individual with autism. Instead, Deputy Nunnery maintained the semi-circle around J.H., which conveyed a threatening and confrontational attitude to J.H. *Id.* According to the Complaint, Deputy Nunnery did not use simple language or a quiet calm voice. *Id.* at ¶ 56. Instead, with his Taser at the ready, Deputy Nunnery repeatedly instructed J.H. to "calm down" and said that he was "not going to let [J.H.] hurt him." *Id.*

After being ensnared in a semi-circle of intimidating men for five minutes and thirty seconds, J.H. attempted to go back into the special classroom. Compl. ¶ 57. J.H. knew that the special education classroom was a place he was supposed to be. For the next approximate two minutes, J.H. attempted to reenter the classroom. *Id.* After his unsuccessful attempt to reenter the classroom, J.H. moved down the hallways towards an administrator. *Id.* at ¶ 58. While running, J.H. kicked his leg in the direction of an administrator. *Id.* Immediately thereafter, Deputy Nunnery deployed his taser, striking J.H. *Id.* From there, J.H. fell face down into the floor. *Id.* J.H. was then left in a pool of his own urine for approximately thirteen minutes before assistance was provided by emergency responded. *Id.* at ¶ 59. Deputy Nunnery was present during this time but made no efforts to check J.H.'s condition. *Id.*

There are no allegations in the Complaint that Deputy Nunnery "reasonably feared for this safety," much less that Deputy Nunnery "reasonably feared for his safety" for the entire five minutes and thirty seconds the unarmed minor was standing against a wall. There is no allegation in the Complaint that Deputy Nunnery was forced to make a "split second" decision during these five minutes and thirty seconds. There is no allegation that J.H. moved towards Deputy Nunnery with a knife or deadly instrument. Ultimately, to the extent "exigent circumstances" ever existed, said exigent circumstances dissipated shortly after Deputy Nunnery's arrival.

Further, to the extent there were any "exigent circumstances" at the time Deputy Nunnery deployed his taser, said circumstances were caused by Deputy Nunnery. The Fifth Circuit has stated in another context that "Just as exigent circumstances are an exception to the warrant requirement, a police-manufactured exigency is an exception to an exception." *United States v. Rico*, 51 F.3d 495, 502 (5th Cir. 1995); see also, *United States v. Chambers*, 395 F.3d 563, 566 (C.A.6 2005) ("[F]or a warrantless search to stand, law enforcement officers must be responding

to an unanticipated exigency rather than simply creating the exigency for themselves"); *United States v. Gould*, 364 F.3d 578, 590 (C.A.5 2004) (en banc) ("[A]lthough exigent circumstances may justify a warrantless probable cause entry into the home, they will not do so if the exigent circumstances were manufactured by the agents" (internal quotation marks omitted)).

Here, to the extent that Deputy Nunnery had an immediate need to deploy his taser at the time he did, said need was the result of circumstances that were <u>created</u> by Deputy Nunnery and his menacing semi-circle and failure to de-escalate. A police-manufactured exigency is an exception to an exception. By failing accommodate J.H., Deputy Nunnery created the need to deploy his taser.

### G. The Actions of Officer Nunnery Constitute "Intentional Discrimination" Because He Knew That Minor J.H. Was Disabled and He Chose Not to Accommodate His Disability.

Deputy Nunnery's individual motivation in choosing not to accommodate J.H. is irrelevant. *Miraglia*, 901 F. 3d at 575 (citing *Delano-Pyle* as authority and stating that it stands for "affirming damages based on a defendant's knowledge of the plaintiff's disability and his decision not to accommodate him"); *Esparza v. Univ. Med. Ctr. Mgmt. Corp.*, No. CV 17-4803, 2017 WL 4791185, at *17 (E.D. La. Oct. 24, 2017) ("One can intentionally violate a nondiscrimination law without possessing animus toward the class of people that the law protects."). In *Perez* and *Miraglia*, the Fifth Circuit noted that in *Delano–Pyle*, the plaintiff did not show he ever requested an interpreter or auxiliary aid, yet the Court concluded that the failure to provide an effective form of communication was evidence of intentional discrimination. 624 F. App'x at 185–86. Therefore, under *Delano-Pyle*, a defendant commits "intentional discrimination" where an employee of a public entity has knowledge of a plaintiff's disability but choses not to accommodate him.

13

The facts of this case demonstrate that Deputy Nunnery had knowledge of J.H.'s disability and that he had an opportunity to accommodate J.H. but chose not to do so. Under *Delano-Pyle*, this constitutes intentional discrimination. Plaintiff alleges that when Deputy Nunnery arrived at the scene, J.H. was exhibiting predictable and obvious manifestation of autism. Compl. ¶ 51. Specifically, J.H. had his fingers in his ears, and was leaning against the hallway wall with his head down, in an apparent attempt to self-soothe. *Id.* Further, Deputy Nunnery was responding to a scene outside of a special education classroom. *Id.* at ¶ 4. Plaintiff alleges that J.H. continued to exhibit "predictable manifestations of autism" for the next five minutes and thirty second and that J.H. "remained essentially motionless and planted in one location." *Id.* at ¶ 52.

Despite knowing that Plaintiff was a person with a disability, Deputy Nunnery escalated the situation by configuring himself and the three administers in a semi-circle around J.H. Deputy Nunnery could have ordered the administrators and/or teachers to leave the scene while he obtained control of the situation, but he chose not to. Deputy Nunnery chose not take any steps to deescalate the situation. This five minute and thirty second period of calm gave Deputy Nunnery more than sufficient opportunity to use a calming tone, work to use de-escalation techniques, break up the menacing semi-circle, or radio to headquarters on how to deal with an individual with autism. Through his knowledge of J.H's disability, knowledge of J.H's need for an accommodation, and choice not to provide an accommodation, Deputy Nunnery committed intentional discrimination.

### H. Plaintiff Urges this Court to Hold that *Hainze* is No Longer Good Law.

Plaintiff urges this Court to hold that *Hainze* is no longer good law. The non-binding nature of *Hainze* is found in the Supreme Court's continued shift towards a strict textual interpretation.

"It is well-settled law that 'if a precedent...has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower court] should follow the case which directly controls, leaving to [the binding authority] the prerogative of overruling its own decisions." *Does 1–7 v. Round Rock Indep. Sch. Dist.*, 540 F. Supp. 2d 735, 749 (W.D. Tex. 2007) (quoting *Agostini v. Felton*, 521 U.S. 203 (1997))); see *United States v. Short*, 181 F.3d 620, 624 (5th Cir. 1999)). That rule coexists with the "equally well-settled [proposition] that a district court may recognize when a precedent has been 'explicitly or implicitly overruled by a subsequent Supreme Court decision.' " *Does 1–7*, 540 F. Supp. 2d at 739 (quoting En*riquez v. Union Pac. R.R.*, No. 5:03–CV–174, 2004 U.S. Dist. LEXIS 28989, 35–36 (E.D. Tex. Jan. 30, 2004)). To decide which rule applies, "the question to ask is whether the holding (not the rationale) of the Supreme Court can be squared with the holding (not the rationale) of the Court of Appeals." *Id*. (quoting *EEOC v. Sidley Austin Brown & Wood*, 406 F. Supp. 2d 991, 996 (N.D. Ill. 2005)); see *Short*, 181 F.3d at 625 (conducting substantively the same analysis to conclude that intervening Supreme court decision did not alter prior, binding Fifth Circuit precedent).

The language of *Hainze* indicates that the Fifth Circuit crafted an exception to ADA based on perceived risk to "innocents," not based on a strict textual interpretation of the statute.[2] A review of the text of § 12132 of the ADA does not reveal any such "on-the-street response to [a] reported disturbance" exception. The holding of the Fifth Circuit in *Hainze* cannot be squared with the holding of the Supreme Court in *Ross*, which prohibits engrafting an unwritten exception onto the otherwise clear text of a statute. 136 S. Ct. 1850. This Court should rule that *Hainze* is no longer binding precedent.

---

[2] *Hainze*, 207 F.3d at 801 ("To require the officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and any nearby civilians, would pose an unnecessary risk to innocents.").

15

## CONCLUSION

Through the allegations in his Complaint, Plaintiff has clearly stated a claim for intentional discrimination under the ADA and RA. Deputy Nunnery had knowledge that Plaintiff was disabled but chose not to accommodate Plaintiff's disability. Further, Defendant's reliance on *Hainze* is misplaced because Deputy Nunnery's actions were not the result of exigent circumstances, but rather, the result of circumstances that were created by Deputy Nunnery through his failure to accommodate Plaintiff's disability. Simply put, Defendant's motion for judgment on the pleadings is based on an incomplete statement of the facts and the law and its motion should be denied.

Respectfully Submitted,

BIZER & DeREUS, LLC
Attorneys for Plaintiff
Andrew D. Bizer, Esq. (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus, Esq. (LA # 35105)
gdereus@bizerlaw.com
Emily Westermeier, Esq. (LA # 36294)
ewest@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

By:/s/ Emily A. Westermeier
**EMILY A. WESTERMEIER**

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of May 2019, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

By:/s/ Emily A. Westermeier
EMILY A. WESTERMEIER