**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| J.H., THROUGH HIS NEXT OF FRIEND ROSIE PHILLIPS | CIVIL ACTION NO. 18-994 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| SHERIFF STEPHEN W. PRATOR | MAGISTRATE JUDGE HAYES |

**MEMORANDUM RULING**

Before the Court is Defendant Sheriff Stephen W. Prator's ("Prator") Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). See Record Document 18. Plaintiff, J.H. through his next of friend Rosie Phillips ("Plaintiff"), opposes the motion. See Record Document 24. Prator seeks dismissal of all Plaintiffs' claims under the Americans with Disabilities Act and the Rehabilitation Act. The Court having considered Prator's Motion for Judgment on the Pleadings, the Motion is hereby **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**FACTUAL AND PROCEDURAL HISTORY**

This action is centered around an incident in August 2017 between an autistic, non-verbal student ("J.H.") and Nunnery, a Caddo Parish Sheriff's Deputy at Northwood High School ("NHS"). See Record Document 1 at 2. For the 2017-2018 school year, J.H. was in the tenth grade and placed at NHS "to receive special educational services in the school's program for children with severe and profound autism." Id. More specifically, J.H. was placed in "a small, self-contained environment with other students with profound disabilities." Id. To provide security, the Caddo Parish School Board contracts with Prator

to place Sheriff's deputies in Shreveport area schools. See id. Deputy Nunnery was assigned to NHS for the date in question. See id.

On August 31, 2017, J.H. was in his special education classroom when he began "manifesting symptoms of his disability and eventually ran from the classroom." Id. at 3. Plaintiff asserts it is unclear why J.H. walked out of the classroom but does allege it was clear that J.H. had been "triggered and agitated" by a staff person who was not his assigned teacher. Id. at 13. Security footage provided to the Court and described in detail in Plaintiff's complaint captured the events in the hallway.[1] See id. at 12. While in the hallway J.H. was compulsively drinking water and placing his fingers in his ears, which Plaintiff alleges are "predictable behaviors of J.H.'s autism" and serve as a way for J.H. to self-soothe. Id. at 13. During this time, J.H. continued to walk in and out of his classroom. See id. Soon thereafter, two school administrators arrived. A few "minor struggles" occurred between the administrators and J.H. when J.H. again attempted to enter his classroom. Id.

After several minutes, Deputy Nunnery arrived and J.H. was "swatting at the administrators." Id. J.H. then exhibited "predictable behaviors of J.H.'s autism" by placing his fingers in his ears and leaning up against the wall for about five minutes. Id. at 13–14. During these five minutes, J.H. was "flanked by three school administrators and/or teachers and by Deputy Nunnery." Id. at 14. Additionally, during this period, Plaintiff alleges Deputy Nunnery repeatedly instructed J.H. "to calm down" and that he was "not going to let [J.H.] hurt him." Id. After approximately five minutes, J.H. again attempts to

---

[1] The Court viewed the video provided by Defendant, but the Court notes that the video contained no audio. See Record Document 31.

go back into his classroom. A minute later, J.H. moves down the hall "with his arms up at his sides and with his palms open." Id. at 15. J.H. then "ran back towards an administrator and while running he kicked his leg in the direction of the administrator." Id. Immediately thereafter, Deputy Nunnery deploys his taser, and J.H. falls "face down to the floor" in a pool of his own urine. Id. J.H. remained on the floor until emergency responders and his mother arrived thirteen minutes later. See id.

J.H., through his "next of friend" Rosie Phillips, brought this present action against Sheriff Prator alleging violations of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA").[2] Id. at 3. More specifically, Plaintiff alleges Prator failed to "make reasonable accommodations that were necessary for J.H. to meaningfully interact with the Sheriff's deputy." Id. Additionally, Plaintiff asserts Prator discriminated against J.H. based on his disability. See id. at 16–17. Prator now seeks a Judgment on the Pleadings asserting Plaintiff failed to allege a legally cognizable claim under either the ADA or RA. See Record Document 18. Plaintiff filed an opposition and, with leave of court, filed a supplemental memorandum. See Record Documents 24 & 34. Prator filed a reply to both the opposition and the supplemental memorandum. See Record Documents 29 & 41.

---

[2] The Court notes Louisiana does not recognize "next of friend," but instead utilizes tutorship for minor representation. See La. Civ. Code arts. 246, et. seq. Therefore, as Rosie Phillips is the mother of J.H., she is the natural tutor and likely the proper party to bring this suit on behalf of J.H. See Record Document 1 at 5.

## LAW AND ANALYSIS

**I. Legal Standards**

**A. Pleading and 12(c) Motion for Judgment on the Pleadings Standards**

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is a "plausibility" standard found in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), and its progeny. Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555–56, 127 S. Ct. at 1965. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(c) provides that any party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." The standard for dismissal under Rule 12(c) is identical to Rule 12(b)(6) motion to dismiss. See Magee v. Reed, 912 F.3d 820, 822 (5th Cir. 2019). Accordingly, under Rule 12(c), courts must accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id. Furthermore, a court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has plead a legally cognizable claim. See Thompson v. City of Waco, Tex., 764 F.3d 500, 503 (5th Cir. 2014). Courts considering

a motion to dismiss under Rule 12(c) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See Iqbal, 556 U.S. at 678–79, 129 S. Ct. at 1949, see also Twombly, 550 U.S. at 555, 127 S. Ct. at 1965.

Rule 12(c) is "designed to dispose of cases where material facts are not in dispute and judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002) (quoting Hebert Abstract Co., Inc. v. Touchstone Props., Ltd., 914 F.2d 74, 76 (5th Cir. 1990)). In other words, judgment on the pleadings pursuant to Rule 12(c) is appropriate only if "material facts are not in dispute and questions of law are all that remain." Voest–Alpine Trading USA Corp. v. Bank of China, 142 F.3d 887, 891 (5th Cir.1998).

Typically, at the Rule 12(c) stage, courts may not go outside the pleadings. However, in the present action, the Court may consider the video of the incident in assessing the Rule 12(c) Motion for Judgment on the Pleadings because it was referred to in Plaintiff's original Petition and is central to Plaintiff's claims. See Blakely v. Andrade, 360 F. Supp. 3d 453, 472 (N.D. Tex. 2019) (considering video not attached to complaint in analyzing 12(b)(6) motion, but central to Plaintiff's claims); see also New Orleans City v. Ambac Assurance Corp., 815 F.3d 196, 200 (5th Cir. 2016).

**B.   Title II of the ADA and Section 504 of the RA**

Title II of the ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by

any such entity." 42 U.S.C. § 12132. The language of Title II generally tracks the language of Section 504 of the RA.[3] See Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000). Furthermore, the ADA specifically provides "[t]he remedies, procedures and rights" available under Section 504 shall be the same as those available under Title II. 42 U.S.C. § 12133. The ADA and RA are analyzed under the same legal standards, and the same remedies are available for both Acts. See Kemp v. Holder, 610 F.3d 231, 234 (5th Cir. 2010). Thus, the Court will treat Plaintiff's ADA and RA claims coextensively and will analyze them together, as though they were a single claim.

To establish a prima facie case of disability-based discrimination under Title II of the ADA a plaintiff must "show that (1) he or she is a 'qualified individual with a disability'; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) the entity which provides the service, program or activity is a public entity." Douglas v. Gusman, 567 F. Supp. 2d 877, 889 (E.D. La. 2008). Additionally, to recover compensatory damages under the ADA and RA, a plaintiff must prove intentional discrimination. See Delano-Pyle v. Victoria Cty., Tex., 302 F.3d 567, 574 (5th Cir. 2002). Further, when a plaintiff asserts a cause of action against an employer-public entity, under either the ADA or RA, "the public entity is liable for the vicarious acts of *any* of its employees as specifically provided by the ADA." Id. at 574–75.

---

[3] Section 504 of the Rehabilitation Act provides that "no qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

## II. Analysis

Prator argues Plaintiff has failed to state a claim of intentional discrimination, a necessary requirement to award compensatory damages under the ADA and RA. Prator therefore asserts Plaintiff's claim for compensatory damages fails as a matter of law. See Record Document 18 at 12–14. Furthermore, Prator contends Plaintiff lacks the standing required to bring a declaratory judgment action. See id. at 14–15.[4] Each of these arguments will be addressed in turn.

### A. Intentional Discrimination

Prator asserts the ADA and RA claims must be dismissed because Plaintiff failed to allege any specific facts indicating intentional discrimination, a prerequisite to recovery of compensatory damages under the ADA and RA. See Delano-Pyle, 302 F.3d at 574; see also Record Document 18-1 at 12–13. More specifically, Prator contends that to prove intentional discrimination, Plaintiff must allege facts regarding Deputy Nunnery's "subjective intent to discriminate against J.H." Record Document 18-1 at 13. Plaintiff disagrees and instead asserts that "intentional discrimination exists where a defendant has knowledge of the plaintiff's disability and nonetheless choses [sic] to not provide adequate accommodate [sic]." Record Document 24 at 9.

The Fifth Circuit has never adopted a formal standard for proving intentional discrimination under the ADA and RA. See Miraglia v. Bd. of Supervisors of LA State Museum, 901 F.3d 565, 574 (5th Cir. 2018); Perez v. Doctor's Hosp. at Renaissance,

---

[4] Prator also sought dismissal on the basis that Plaintiff's allegations are not actionable under the ADA or RA. See Record Document 18-1 at 10–12. The Court did not need to address the merits of this argument as all claims were dismissed on the above-mentioned bases.

Ltd., 624 F. App'x 180, 184 (5th Cir. 2015). However, the Fifth Circuit has provided some guidelines indicating what intent may require. In Perez, the Fifth Circuit noted that intent requires purposeful action and is usually demonstrated "only by inferences" which are left to a fact-finder. 624 F. App'x at 184. In Miraglia, the court found intent required "that the defendant at least have actual knowledge of the violation." 901 F.3d at 575. Furthermore, in Miraglia the court stated: "[w]e previously seem to have required that a plaintiff prove . . . something more than 'deliberate indifference' to show intent." Id. To summarize, to prove intentional discrimination under the ADA and RA, the Fifth Circuit appears to require both actual notice of the violation and something more than deliberate indifference.

Actual notice of the violation does not appear to be in dispute, so the sole issue is whether Plaintiff sufficiently alleged intentional discrimination to satisfy a "heightened" standard of deliberate indifference. The Court will first apply the deliberate indifference test used by most other circuits, because at a minimum, the Plaintiff must satisfy this standard. The deliberate indifference standard requires a plaintiff prove the defendant "knew that harm to a federally protected right was substantially likely" and "failed to act on that likelihood." Liese v. Indian River Cty. Hosp. Dist., 701 F.3d 334, 344 (11th Cir. 2012). Further, the standard "does not require a showing of personal ill will or animosity toward the disabled person," but it does, however, require a "deliberate choice, rather than negligence or bureaucratic inaction." D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 269 (3rd Cir. 2014) (internal citations and quotations omitted).

In his Motion for Judgment on the Pleadings, Prator argues that factual allegations in Plaintiff's complaint regarding intentional discrimination are conclusory and, therefore, insufficient to state a claim under the ADA and RA. See Record Document 18-1 at 13.

The Court agrees. The only mention of discrimination in the complaint is conclusory and fails to allege any facts indicating deliberate indifference on the part of Prator and/or Deputy Nunnery. See Record Document 1 at 17. For example, Plaintiff alleges Deputy Nunnery was "purposeful in his choices, which is sufficient to constitute intentional discrimination under the ADA." Id. Plaintiff also contends that Prator "discriminated against J.H. with deliberate indifference to his rights," and that "[b]ased on the facts alleged above, Prator intentionally discriminated against J.H." Id.

These allegations do not meet the deliberate indifference standard. Plaintiff has not plead facts showing that Deputy Nunnery or Prator knew of the substantial likelihood of harm to a federally protected right. Although the complaint asserts Prator "knew or should have anticipated that its deputies would interact with children with autism," this alleged knowledge does not demonstrate Prator knew there was a substantial likelihood of a violation of the ADA and RA. Id. at 2. Additionally, even if Prator and/or Deputy Nunnery had knowledge of J.H.'s disability, this is insufficient to prove intentional discrimination. As Prator correctly notes, knowledge is a "necessary, but not sufficient, element of an intentional discrimination claim." Record Document 29 at 7; see also Miraglia, 901 F.3d at 575. Therefore, even if Plaintiff properly alleged that Deputy Nunnery or Prator had knowledge of J.H.'s disability, this is insufficient to prove that Deputy Nunnery or Prator had knowledge of a substantial likelihood of harm to a federally protected right.

Furthermore, even assuming Plaintiff properly plead Prator or Deputy Nunnery's knowledge, Plaintiff failed to allege any facts indicating Prator made a deliberate choice not to provide SROs with training on how to interact with autistic children. Deliberate

indifference requires a "deliberate choice, rather than negligence or bureaucratic inaction." D.E., 765 F.3d at 269. The absence of any training prior to the incident with J.H. is insufficient to allege a "deliberate choice" and at most suggests only "bureaucratic inaction." Furthermore, the fact that Prator did provide a training for SROs on interaction with autistic students after the incident between J.H. and Deputy Nunnery merely serves as evidence of Prator's compliance with the law.

Plaintiff also fails to allege any facts indicating Deputy Nunnery deliberately chose to harm J.H.'s federally protected rights. Rather, the complaint only mentions actions Deputy Nunnery should have taken to de-escalate the situation. See Record Document 1 at 14–15. Plaintiff's allegation that Deputy Nunnery was "purposeful in his choices" is insufficient to demonstrate Deputy Nunnery deliberately chose to harm J.H.'s federally protected rights. Even when applying the deliberate indifference standard of intent – which the Fifth Circuit has indicated is a lower threshold than the standard that governs this court – Plaintiff has failed to present facts to satisfy this lower standard of intent. Therefore, because Plaintiff has failed to plead intentional discrimination, Plaintiff's claim for compensatory damages under the ADA and RA must be dismissed.

**B. Standing Requirement for Declaratory Judgment Actions**

Prator also contends that Plaintiff lacks standing to seek declaratory relief because Plaintiff has failed to "plead any facts regarding any tangible, prospective harm with respect to J.H." Record Document 18-1 at 15. The Court agrees. To establish standing to seek injunctive relief, a plaintiff must show a "real and immediate threat that the plaintiff will be wronged again." City of Los Angeles v. Lyons, 461 U.S. 95, 111, 103 S.Ct. 1660, 1670 (1983). Nowhere in the complaint does Plaintiff allege any future threat that J.H. will

be harmed again by Prator. Furthermore, Plaintiff did not oppose Prator's Motion for Judgment on the Pleadings on her claims for declaratory relief.[5] Therefore, Plaintiff's claim for declaratory or injunctive relief under the ADA and RA must be dismissed.

## CONCLUSION

For the foregoing reasons, Prator's Motion for Judgment on the Pleadings (Record Document 18) is **GRANTED**. Therefore, all of Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith. The Clerk of Court is directed to close this case.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this the 7th day of February, 2020.

*/s/ S. Maurice Hicks*
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[5] Plaintiff's failure to defend the remedy of declaratory relief in her opposition to the motion for judgment on the pleadings constitutes abandonment of the claim. See Black v. N. Panola Sch. Dist., 461 F.3d 584, 588 n.1 (5th Cir. 2006) (plaintiff abandoned retaliatory abandonment claim when she failed to defend claim in response to motion to dismiss).